```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
HANNAH V. WATSON,

                    Plaintiff
                                        08 Civ. 1523 (DAB)(JCF)
           -against-                    ADOPTION OF REPORT
                                        AND RECOMMENDATION
MICHAEL J. ASTRUE, Commissioner of
Social Security,

                    Defendant.
------------------------------------X
```

DEBORAH A. BATTS, United States District Judge.

This matter is before the Court upon a Report and Recommendation ("Report") of United States Magistrate Judge James C. Francis, which was filed February 4, 2009. The Report recommends that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and Defendant's Motion for Judgment on the Pleadings be GRANTED. (Report at 1, 22.)

The facts in this matter are meticulously detailed in Judge Francis' Report, and will not be fully restated here. Plaintiff has submitted timely Objections to the Report.

## I. OBJECTIONS TO THE REPORT

A.  Standard of Review

    1.   Standard of Review of a Report and Recommendation

"Within fourteen days after being served with a copy [of a Magistrate Judge's Report and Recommendation], a party may serve and file specific written objections to the proposed findings and

recommendations." Fed. R. Civ. P. 72(b)(2); accord 28 U.S.C. § 636(b)(1)(C). The court may adopt those portions of the report to which no timely objection has been made, as long as there is no clear error on the face of the record. Wilds v. United Parcel Serv., Inc., 262 F.Supp.2d 163, 169 (S.D.N.Y. 2003). A district court must review de novo "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). "To the extent, however, that the party makes only conclusory or general arguments, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07-CV-6865, 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008); see also Ortiz v. Barkley, 558 F.Supp.2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition.") (citation and internal quotation marks omitted). After conducting the appropriate levels of review, the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate. 28 U.S.C. § 636(b)(1)(c).

2.   Standard for Review of an ALJ's Decision

The Court will "set aside an ALJ's decision only where it is based upon legal error or is not supported by substantial evidence."  Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999) (quoting Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998)). "Substantial evidence . . . is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (quoting Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996)).

To be considered "disabled" under the Social Security Act, "a claimant must demonstrate an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  Rosa, 168 F.3d at 77 (quoting 42 U.S.C. § 423(d)(1)(A)).  An "individual's impairment must be of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  Id. (quoting 42 U.S.C. § 423(d)(2)(A)).

The Second Circuit has implemented the Social Security Administration's five-step procedure for evaluating disability claims under 20 C.F.R. § 404.1520 in the following manner:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him disabled without considering vocational factors such as age, education, and work experience . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

Rosa, 168 F.3d at 77 (citing Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982)).

B.  Plaintiff's Objection that the ALJ did not Develop the Administrative Record.

"It is the rule in our circuit that the ALJ, unlike a judge in a trial, must herself affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding. This duty . . . exists even when . . . the claimant is represented by counsel." Rosa, 168 F.3d at 79 (quoting

Pratts, 94 F.3d at 37). Thus, "an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." Id. (Schaal v. Apfel, 134 F.3d 496, 505 (2d Cir. 1998)).

Here, Plaintiff first objects that despite noting that there was no evidence of ongoing treatment for Plaintiff's cardiac impairment, the ALJ "made no effort to obtain those records even though [Plaintiff] testified that she is currently taking Nitroglycerin, prescribed for chest pain." (Plt's Obj., 2.) Plaintiff also argues that the ALJ failed to investigate Plaintiff's alleged mental impairment. (Plt's Obj., 2-3.)

1. Plaintiff's Heart Condition

During her hearing, Plaintiff explained to the ALJ that she had a heart attack, had two stints placed in her heart, and that she had been using Nitroglycerin for the past two months due to chest pain related to the closing of one of the stints. (R. at 285-86.) When the ALJ asked if her cardiologist was "planning additional procedure[s]" she replied: "He just said, we'll see what's going to happen in . . . I go back in six months, so . . . I don't know, if he's going to do any other procedures as of yet." (R. at 286.)

It is clear from this discussion on the record that Plaintiff's heart condition was being monitored, but that beside taking medication, she was not receiving any ongoing treatment from her physician. Additionally, the ALJ had received and reviewed the medical records related to Plaintiff's heart condition. (R. at 139-194.) Hence it is not clear what additional records or information related to Plaintiff's heart condition or use of Nitroglycerin were available or obtainable by the ALJ. Finally, while the ALJ was required to inquire into Plaintiff's treatment to ensure a complete record, Plaintiff cites to no authority that would require the ALJ to second-guess Plaintiff's own testimony about the extent of her treatment to ensure that her physician had in fact prescribed no other ongoing treatment. Accordingly, the Court finds that the ALJ sufficiently developed the record with regard to Plaintiff's heart condition.

2.   Plaintiff's Mental Condition

Although Plaintiff did not list mental health as a basis for disability in her December 29, 2005 Disability Report, (R. at 40), she nevertheless contends that the ALJ did not adequately develop the record with regard to her alleged mental impairment.

6

Plaintiff cites to Rodriquez v. Barnhart, 2006 WL 988201, *4 (S.D.N.Y. Apr. 13, 2006), for the proposition that an ALJ must "investigate the disabling effects of an impairment if the record contains evidence indicating that such an impairment might exist," even where Plaintiff did not list that impairment on her disability application. Id.

However, while it is true that the ALJ has an affirmative duty to develop the record with regard to issues that are placed before her, even if those issues were not stated in the disability application, "[s]ome Courts of Appeals have held that failure to raise an issue before the ALJ waives judicial review of the issue, at least where the claimant was represented by counsel before the ALJ." Williams v. Astrue, 2008 WL 4755348, *12 n.11 (S.D.N.Y. Oct. 27, 2008) (citing Anderson v. Barnhart, 344 F.3d 809, 814 (8th Cir. 2003); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999)); see also, Mills v. Apfel 244 F.3d 1, 8 (1st Cir. 2001) (rejecting applicant's attempt to raise an issue on appeal that had not been raised at the hearing before the ALJ because to allow the issue to be raised "could cause havoc, severely undermining the administrative process.")

Although it appears that the Second Circuit has not yet ruled on this precise issue, a number of district courts in this Circuit have found that failure to raise an issue before the ALJ

7

waives that issue's review by the District Court.  See, e.g., Carvey v. Astrue, 2009 WL 3199215, *14 (N.D.N.Y. Sep. 30, 2009) ("The failure to present an argument to the ALJ constitutes waiver of the right to raise it on appeal."); Williams, 2008 WL 4755348, at *12 (rejecting plaintiff's argument that her "depressed mood was an independent severe impairment" where "plaintiff did not argue to the ALJ that this condition was a sufficient additional impairment"); Harvey v. Astrue, 2008 WL 4517809, *15 (N.D.N.Y. Sep. 29, 2008) (because "Plaintiff's counsel did not challenge the basis for the vocational expert's testimony and failed to raise any objection to the conduct of the ALJ until now . . . the objections are forfeited.".

Unlike in Rodriguez, Plaintiff here did not merely fail to list her alleged mental impairment on her disability application. Rather, neither Plaintiff nor her counsel raised the issue of the alleged mental impairment before the ALJ in Plaintiff's June 26, 2007 hearing. (R. at 267-90). Indeed, when asked by the ALJ whether the Plaintiff was "primarily going ahead on the orthopedics," Plaintiff's attorney replied "[t]hat's correct." (R. at 276.) Subsequently, in her appeal of the ALJ decision to the Appeals Council, which was denied on December 21, 2007, (R. at 4-6), Plaintiff argued that the ALJ "improperly assessed the weight of the evidence," did not provide proper grounds for

applying less weight to the opinion of Dr. Memoli, and "failed to render any detailed analysis" of Plaintiff's "allegation of pain" and testimony about "her physical symptoms and limitations." (R. at 8-9.) Nowhere, however, did she argue or raise the issue of an alleged mental impairment. (R. at 8-9.)

Not only did Plaintiff and her counsel waive the issue of her alleged mental impairment by failing to present it to the ALJ, she also never obtained treatment or medication for her alleged mental impairment,[1] despite a Federation Employment and Guidance Service ("FEGS") Social Worker's referral to a psychologist, (R. at 208, 210), a recommendation of psychiatric treatment by Doctor Umeasor, (R. at 215),[2] and an additional offer to refer her to a psychologist from a second FEGS Social Worker, (R. at 219.). In fact, Plaintiff expressly declined the social worker's offer to refer her for psychiatric care. (R. at 210.)

---

[1] Although Plaintiff suffered from bipolar disorder in the past, she has not seen a psychiatrist in the past 8 years and was not diagnosed with bipolar disorder. (R. at 215, 219.)

[2] While Doctor Umeasor recommended that Plaintiff seek further psychiatric evaluation, the record suggests that Doctor Umeasor never performed a formal psychological evaluation of the Plaintiff. (R. at 215) (noting that the [patient] scored high on depression scale, [but that] no psych eval [had been completed] and [that she was] not on psych meds currently).

9

Accordingly, where, as here, Plaintiff was represented by counsel, failed to seek either a formal diagnosis or treatment for the alleged impairment, and chose not to raise the alleged impairment at each step of the administrative proceedings, the Court finds that Plaintiff has waived the issue of the alleged mental health impairment and that the ALJ sufficiently performed her duty to ensure a complete record of the issues before her.

C.  Plaintiff's Objection that she is not Able to Perform her Past Relevant Work

Plaintiff further objects to the Report on the basis that despite determining that she was unable to reach overhead with her left arm, (R. at 14), the ALJ found that she could engage in her past relevant work as an administrative assistant. (Plt's Obj., 4-5.)  Here, the ALJ found that Plaintiff's inability to reach overhead with her left arm "is consistent with an ability to perform a wide range of sedentary work" and that Plaintiff "is able to perform her past relevant work as an administrative assistant as the claimant described that she actually performed it and as the work generally is performed in the national economy." (R. at 14, 18.)

Given the lack of testimony or evidence that reaching overhead was part of Plaintiff's previous relevant work as an

10

administrative assistant, (R. at 278-80), and given the fact that Plaintiff is right-handed, (R. at 121), the Court finds that the ALJ's finding that Plaintiff could perform her past relevant work as an administrative assistant was based upon substantial evidence.

D.   Plaintiff's Objection that the ALJ Failed to Consider the effect of Ms. Watson's Obesity on her Residual Functional Capacity.

Finally, Plaintiff objects that the ALJ failed to consider how her obesity affects her ability to perform her past relevant work. (Plt's Obj., 5.)  While "obesity is not in and of itself a disability . . . [it] may be considered 'severe' and thus medically equal to a listed disability if alone or in combination with another medically determinable physical or mental impairment, it significantly limits an individual's physical or mental ability to do basic work activities." Cruz v. Banhart, 2006 WL 1228581, *9 (S.D.N.Y. May 8, 2006) (internal citations omitted).  However, "there is no obligation on an ALJ to single out a claimant's obesity for discussion in all cases" and "[t]hose circuits which have recently commented on this complaint have held that an ALJ's failure to address explicitly a claimant's obesity does not warrant remand. . . . When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is

11

understood to have been factored into their decisions." Id. (quoting Guadalupe v. Banhart, 2005 WL 2033380, *6 (S.D.N.Y. Aug. 24, 2005); citing Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005); Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004)).

Here, the ALJ's decision adopted the findings of Doctor Seslowe and Doctor Calvino but expressly gave less weight to Doctor Memoli's findings because the ALJ found they were in conflict with the remaining physicians' findings, were not supported by the MRI of Plaintiff's knee, and were not supported by the treatment history and testimony of the claimant. (R. at 16-18.) The adoption of the physicians' findings explicitly included findings as to Plaintiff's physical limitations. For instance, the ALJ noted that Doctor Calvino assessed the claimant "as having mild limitations as to heavy lifting, frequent bending and squatting, and moderate limitations for repetitive overhead activity utilizing the left upper extremity, but there were no restrictions as to sitting or fine motor activities as to either upper extremity." (R. at 17.)

The Court finds that the ALJ's decision to provide more weight to the physical limitation assessments of Doctor Seslowe and Doctor Calvino than to those of Doctor Memoli was based upon substantial evidence. Further, because the ALJ adopted the physical limitations findings of Doctors Seslowe and Calvino,

12

which necessarily incorporated an assessment of Plaintiff's asserted obesity, her failure to explicitly discuss obesity was not an error of law.

## II. CONCLUSION

The Court reviews the remainder of the Report for clear error. Having found no clear error on the record with the remainder of the Report, and having conducted an independent de novo review of the specifically objected-to portions of the Report, it is ORDERED as follows:

1. The Report and Recommendation of United States Magistrate Judge James C. Francis dated February 4, 2009 be and the same hereby is APPROVED, ADOPTED, and RATIFIED by the Court;

2. Plaintiff's Motion for Judgment on the Pleadings is DENIED, and Defendant's Motion for Judgment on the Pleadings is GRANTED;

3. The Clerk of the Court is directed to CLOSE the docket in this matter.

SO ORDERED.

Dated:   New York, New York

April 22, 2010

Deborah A. Batts
United States District Judge